### ROBERT GOODWIN *vs.* AMOS AVERY.

Two hackmen got into an affray in a strife for precedence in forming a funeral procession.   One had been engaged by the person in charge of the funeral and had been assigned by him to the place contended for.   The other had been engaged by another person.   Held,—1. That the portion of the highway upon which the procession was being formed was in the lawful occupation of the family having the funeral, and that they had the right to determine the order of the procession, which right they might exercise directly or through a person employed to conduct the funeral.   2. That the hackman assigned to the place in question had therefore a right to it, and that having the right, he might lawfully use all reasonable force to prevent its occupancy by the other.

Where two parties, each without any better right than the other, strive to occupy the same place in the public highway, he is in the wrong who first uses force.

TRESPASS, for an assault and battery, tried to the jury on the general issue.

The plaintiff and defendant were hack-drivers.   A Mr. Prince, in making preparations for the funeral of a child, had employed one Potter to superintend the arrangements for the funeral and to procure the necessary carriages, and Potter, in pursuance of his directions, had engaged the defendant, among others, to attend with his hack.   Previous to the funeral, a brother of Mr. Prince, without the knowledge of Potter, had engaged the plaintiff to attend the funeral with

his carriage. The plaintiff and defendant both attended with their carriages, and the injuries which the plaintiff claimed to have received, were the consequence of a strife between them to obtain a certain position in the funeral procession.

The defendant offered evidence to prove, that he arrived at the funeral in his carriage previous to the arrival of the plaintiff, and took a position in the public street in front of the house where the funeral was to be held; that a person by the name of Licet, the driver of another carriage, took a position behind the defendant; that while the defendant and Licet were thus arranged in line in the procession that was to be formed, Potter gave directions to the defendant to drive out and let Licet take his place, and gave directions to the defendant to take the place next behind Licet; that thereupon the defendant turned his carriage round for the purpose, and while he was thus turning, the plaintiff arrived and occupied the place with his carriage,—Potter at this time having gone into the house; that thereupon the defendant informed the plaintiff that Potter, who had charge of the funeral arrangements, had assigned to him the place the plaintiff then occupied, and requested him to back his team and let him take the place; that the plaintiff refused to leave the place or let the defendant occupy the same; that the defendant's carriage was at this time in an angling position with a line running with the street, with the heads of his horses in advance of the heads of the plaintiff's horses, and near the back of Licet's carriage; that while in this position the defendant was standing by the heads of his horses, holding them by the bits, and the plaintiff was sitting in his carriage, when the defendant requested Licet, without the knowledge of the plaintiff, to drive his carriage forward; that Licet drove forward, and the defendant caused his horses to move forward at the same instant to occupy the place left vacant; that after his horses began to move forward to occupy the place, the plaintiff discovered his design and began whipping his, the plaintiff's, horses; that the plaintiff's horses started forward, and the defendant being at

the time in advance of them with his own horses, the horses of the plaintiff struck the defendant, and the pole of the plaintiff's carriage hit him in the back, hurting him considerably; that thereupon the defendant took the horses of the plaintiff by the bridle to keep them from being driven by the plaintiff upon him; that thereupon the plaintiff commenced beating him with his whip over the head and shoulders, and that in order to protect himself from the attack of the plaintiff, he committed the acts of which the plaintiff complained, doing no more than was reasonably necessary, under the circumstances, for his self-defence. The plaintiff offered evidence to prove, that after he had occupied the place behind Licet with his carriage, and when the defendant requested him to leave the place and let him occupy the same, he informed the defendant that he would leave the place if Potter should so direct; and that when Licet began to move his carriage forward, he caused his own horses to move forward at the same time, and that the defendant thereupon seized his, the plaintiff's, horses by the bridle and forced them back, to prevent the plaintiff from occupying the place left vacant by Licet; and that if he struck the defendant with his whip, it was unintentional. Potter did not know that the plaintiff had been engaged, or had arrived to attend the funeral, until after the affray.

Upon the various claims of the parties the court charged the jury substantially as follows :—" It seems admitted in this case that an assault and battery was committed by the defendant upon the plaintiff, for which the defendant would be responsible in damages, unless justified upon the principle of self-defence. In such cases it becomes important to ascertain, if we can, which party was in the right, and which in the wrong, in the commencement of the affray. The parents of the deceased child had the right to a reasonable occupancy of the public street in front of their house, for the purpose of forming the funeral procession of their child. The use and occupancy of the carriages they had employed being theirs for the occasion, they consequently had the right to direct in what order those carriages should be placed in the

procession; and the drivers of the carriages, being themselves in their employ, were under obligations to conform to their directions. The parents, having thus the control of the carriages they had employed, might engage the services of another, (as is usual on such occasions,) to make those directions for them; and the directions of the person thus employed would be considered as the directions of the parents. It is admitted in this case that Potter was thus employed, and the fact was known by the plaintiff and the defendant previously to the affray. You will then inquire, in the first place, whether Potter had directed the defendant to take the place in the procession next after Licet. If he had so directed, and the defendant informed the plaintiff to that effect, it was the duty of the plaintiff to have allowed the defendant to occupy the place; and when Licet moved his carriage forward, and the defendant proceeded to occupy the place thus left vacant, if the plaintiff drove his carriage forward to prevent the defendant from thus occupying the place, he was in the wrong, and I think the defendant would be justified in gently taking the horses of the plaintiff by the bridle and stopping them, if he did no more; and if the plaintiff then proceeded to inflict an assault and battery upon the defendant, the defendant might repel the assault, doing no more than was reasonably necessary, under the circumstances, to defend himself. If the defendant carried his defence further than was reasonably necessary under the circumstances, he would be liable for the excess. If you find that Potter had not directed the defendant to occupy the place next behind Licet, then, in order to ascertain which party was in the wrong in the commencement of the affray, you will consider which party first proceeded to violence. Under ordinary circumstances the right of one person to the public highway, for public highway purposes, is as good as that of another. The highway is for the public—for one and for all. But when one person occupies a particular part of the highway for highway purposes, he has an exclusive right to that part of the highway a reasonable length of time, under all the circumstances. Again, under ordinary circum-

stances, if two persons in carriages seek to occupy a part of the highway which, as yet, is unoccupied by either, the party who can peaceably occupy the place first, will be entitled to it for the time being ; but he would not be justified in resorting to violence, either upon the person or property of the other, in order to occupy the place first. The one would not be justified in driving his horses upon the other, in order to occupy the place first; neither would the other be justified in seizing the horses of the first and forcing them back for the same purpose. The party, under such circumstances, who first resorted to force and violence, would be in the wrong, and that violence might be lawfully resisted by the other, doing no more than was reasonably necessary, under the circumstances, to defend himself; while the other, being in the wrong, would be responsible in damages for whatever injury he might occasion, while his adversary kept within the proper limits of self-defence."

The jury returned a verdict for the defendant, and the plaintiff moved for a new trial for error in the charge of the court.

*Lippitt*, in support of the motion.

*Wait* and *Brandagee*, contra.

STORRS, C. J.  No complaint is made of the latter part of the charge below, which was founded on the supposition that, at the time of the affray between the parties, the part of the highway where it occurred was not in the occupation of any person, and that the parties were struggling for the possession of it. The argument before us has proceeded on the assumption that Mr. Prince was then, by his servants, the drivers of the carriages who were engaged by him to attend the funeral of his child, in the occupancy of the place, for the purpose of forming the procession on that occasion ; and that the order in which the carriages should be formed in the procession was by him confided to Mr. Potter, who, it is admitted, became thereby his agent for that purpose, and whose directions in respect to it were therefore in law those of Mr. Prince himself. The latter being thus in the possession of

that part of the highway, for what was clearly a lawful purpose, had a right, either personally or through Mr. Potter, to direct as to the places in the procession which the carriages engaged by him should occupy, and the drivers therefore had a right to follow those directions; and if, in conforming or endeavoring to conform to them, they were prevented from doing so or obstructed by the plaintiff, (who was not in the employ of Mr. Prince or acting by his direction, and therefore had no right to interfere with him or his servants in these funeral arrangements,) they had a right to oppose such acts of the plaintiff, or to defend themselves against any injury from him, by as much force as was necessary in order to enable themselves to occupy the place in the procession assigned to them. The proper enquiries on this part of the case, were—first, whether the defendant was directed by Potter to occupy the place, and was, while occupying or endeavoring to occupy it, obstructed by the plaintiff,—and secondly, if he was so disturbed, whether he used unnecessary force in obtaining or keeping the place. And these questions were submitted by the court below, and with great clearness, to the jury. In one respect, perhaps, the charge was over-favorable to the plaintiff. It required the defendant to prove, not only that Potter had directed the defendant to occupy the place for which the parties were struggling, but also that the defendant had informed the plaintiff to that effect. It is questionable whether the plaintiff had strictly any right to such information from the defendant ; for if the latter had, by Potter's directions, a right to take that place, it would seem that he could not lawfully be deprived of it by the plaintiff, whether it was made known to him by the defendant or not. This point, however, has not been made, and it is unnecessary to notice it further. We discover no error in the charge of which the plaintiff can complain, and therefore do not advise a new trial.

In this opinion the other judges concurred.

New trial not advised.